UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TARA JENNER, an individual,

    Plaintiff,

v.                              Case No.:  2:22-cv-85-SPC-NPM

THE SCHOOL BOARD OF LEE
COUNTY, FLORIDA,

    Defendant.

                                 /

## **OPINION AND ORDER**[1]

Before the Court is Defendant School Board of Lee County's Motion to

Dismiss (Doc. 24).  Plaintiff Tara Jenner responded in opposition (Doc. 27).

The Court grants the Motion.

## BACKGROUND

This is a First Amendment case about Jenner speaking at a Board

meeting ("Meeting").  At the Meeting, the Board planned to elect a new

chairperson from its members.  That election would take place during agenda

"Item B," along with electing a vice chairperson, approving the agenda, and

adopting the schedule for future Board meetings.  Item B offered no

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using
hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties
or the services or products they provide, nor does it have any agreements with them.  The
Court is also not responsible for a hyperlink's availability and functionality, and a failed
hyperlink does not affect this Order.

opportunity for public comment.  Instead, the public could speak later in the Meeting during a different agenda session.

Jenner took offense.  She says state law requires permitting public comment before the Board takes an official action like electing a new chair.  So she stood up to voice her opinions.  When Jenner spoke, the Board's attorney said no public comment was allowed.  After Jenner continued, the attorney had police remove her from the Meeting.  Eventually, the Board elected one of its members as the new chair.

Jenner brings several claims.  Among them, she charges First Amendment violations of her right to speak and petition.  She also sues for infringing her state-law rights.

## LEGAL STANDARD

A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Courts must accept all well-pled allegations as true and view them most favorably to plaintiff. *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017).

**DISCUSSION**

The parties spend much of their papers fighting about what state law demands. They have an interesting dispute, and each raises fair points. Yet the Court need not settle what Florida law requires because the Board's actions did not violate the First Amendment. *See McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004) (imposing municipal liability under 42 U.S.C. § 1983 requires a constitutional violation).

**A. Addressing Claims**

After amending, Jenner lofts First Amendment speech and petition claims. These are different; so courts cannot unthinkingly treat them the same. *Borough of Duryea, Pa. v. Guarnieri,* 564 U.S. 379, 388 (2011). Still, speech and petition rights are "cognate" (i.e., they "share substantial common ground"). *Id.* (citation omitted). Depending on the facts, therefore, courts may apply speech-related tests to petition claims. *Id.* at 392-93, 398.[2]

While pled separately, the parties seemingly agree the same legal standard applies to both claims. *Compare* (Doc. 24 at 11 (arguing the claims are duplicative)), *with* (Doc. 27 at 11 (contending the tests applied to Jenner's

---

[2] *See also Biddulph v. Mortham,* 89 F.3d 1491, 1496-97 (11th Cir. 1996) (construing Petition Clause claim as a Speech Clause claim); *Eichenlaub v. Township of Ind.,* 385 F.3d 274, 279-81 (3d Cir. 2004) (applying forum analysis to Petition Clause claim); *Mirabella v. Villard,* 853 F.3d 641, 653-56 (3d Cir. 2017) ("To balance such competing interests, courts have generally applied Speech Clause precedent, rather than any freestanding Petition Clause doctrine."); *United States v. Percoco,* 13 F.4th 180, 197 (2d Cir. 2021).

speech and petition claims "will be the same")). And given the circumstances, there is no need to wax poetic about the distinct right to petition (like its importance to republican self-government since Magna Carta). *See Guarnieri, 564 U.S. at 395-97*. It is clear the applicable speech standard applies equally to petitioning the Board.

When Jenner stood at the Meeting, she sought to speak about public comment opportunities. These statements included her thoughts on public comment at Board meetings generally and petitioning the Board with her grievances on the topic. However characterized though, Jenner wanted to express her opinions through speech. And there is no meaningful difference between Speech and Petition Clause theories here. *See Galena v. Leone*, 638 F.3d 186, 197 & n.7 (3d Cir. 2011) (treating speech and petition claims as the same for restricting public comment at meeting). What's more, given the Board's weighty interests in orderly meetings, there is no reason to treat speakers different depending on which Clause they purport to vindicate. In sum, the proper analysis addresses both First Amendment claims together.[3]

With that settled, the Court shifts to the normal speech test.

---

[3] While the rights are similar and analyzed together, they are separate. *Guarnieri*, 564 U.S. at 388. Even if they were "duplicative," this Court usually does not dismiss claims on that basis. *E.g.*, *500 La Peninsula Condo. Ass'n. v. Landmark Am. Ins.*, No. 2:20-cv-767-FtM-38NPM, 2020 WL 6273699, at *1 (M.D. Fla. Oct. 26, 2020).

## B. Determining Forum

The First Amendment sets out a broad right—a state "shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I; *see City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 412 n.1 (1993). Of course, that right "is not absolute." *Ashcroft v. Am. Civ. Liberties Union*, 535 U.S. 564, 573 (2002). The "First Amendment does not guarantee persons the right to communicate their views 'at all times or in any manner that may be desired.'" *Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir. 1989) (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981)). To guide the review of restrictions on speech, courts use forum analysis. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1236 (11th Cir. 2019). It follows then that the first step is to decide which one of the three (or four) broad fora applies. *Id.*

Without discussion, the parties agree the Meeting was a limited public forum.[4] They're right public meetings like this one generally fall into that category. *E.g.*, *Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 802-03 (11th Cir. 2004). But courts must not blindly consider public meetings "as a whole because forum analysis is limited to the particular part of the forum to which

---

[4] For good reason, neither says Item B was public or designated (fora with greater scrutiny).

the would-be speaker has sought access." *Barrett v. Walker Cnty. Sch. Dist.,* 872 F.3d 1209, 1224 n.9 (11th Cir. 2017). In other words, the analysis (properly oriented) should focus on Item B—not the entire Meeting or its later public comment session. *Bloedorn v. Grube,* 631 F.3d 1218, 1232 (11th Cir. 2011). The forum "distinction matters because the type of forum determines the level of scrutiny applied." *Keister v. Bell* (*Keister 1*), 879 F.3d 1282, 1288 (11th Cir. 2018).

Item B was not open to public comment and considered ministerial by the Board. So it might register as the lowest forum: nonpublic. *See Cambridge Christian,* 942 F.3d at 1237-40. This forum "is a government 'space that is not by tradition or designation a forum for public communication.'" *Id.* (quoting *Minn. Voters All. v. Mansky,* 138 S. Ct. 1876, 1885 (2018)). "A space where the state is acting only as 'a proprietor, managing its internal operations,' falls into this category." *Id.* (quoting *Walker v. Sons of Confederate Veterans, Inc.,* 576 U.S. 200, 216 (2015)).

Portions of Item B were for obvious internal operation purposes (like approving the Meeting agenda and future calendar). *See* Fla. Stat. § 286.0114(2), (3)(b) (stating the public has no right "to be heard" on "ministerial acts, including but not limited to, approval of minutes"). The parties might even agree electing the vice chair was ministerial because Jenner does not challenge that action. In any event, the Board didn't open the forum

(i.e., Item B) for speech (i.e., public comment).  So perhaps it was not a forum at all.

At this point, it helps to note the Supreme Court's clear-as-mud precedent on whether limited and nonpublic fora are different.  *Compare Walker*, 576 U.S. at 215-16 (distinguishing limited and nonpublic fora), *with Mansky*, 138 S. Ct. at 1885 (identifying only "three types of" fora).  The Eleventh Circuit reads these as distinct.  *Cambridge Christian*, 942 F.3d at 1237 & n.5; *Keister v. Bell* (*Keister 2*), 29 F.4th 1239, 1251 & n.7 (11th Cir. 2022).  Other Circuits—and even some Supremes—don't.  *E.g.*, *Am. Freedom Defense Initiative v. King Cnty., Wash.*, 577 U.S. 1202 (2016) (Thomas, J., dissenting); *NAACP v. City of Phila.*, 834 F.3d 435, 441 & n.2 (3d Cir. 2016). If there is a difference between the two, First Amendment rights are at their lowest measure in a nonpublic forum.  *Cambridge Christian*, 942 F.3d at 1240 ("Indeed, the government has 'much more flexibility to craft rules limiting speech' in a nonpublic forum than in any other kind of forum.") (quoting *Mansky*, 138 S. Ct. at 1885)).

For what it's worth, this case presents a good example of why recognizing a fourth forum is preferable.  Some government properties are "not fora at all." *Ark. Educ. Tele. Comm'n v. Forbes*, 523 U.S. 666, 677 (1998).  When the Supremes said that, they understood limited and nonpublic fora as the same. *Id.* at 677-78; *Barrett*, 872 F.3d at 1225.  But if a limited public forum is

distinct, the question arises what nonpublic means.  Again, it would seem a nonpublic forum is not a forum "at all."  *Forbes*, 523 U.S. at 677.  And Item B appears to fit neatly within that characterization.  Put simply, the Board did not open Item B to speech from anyone.  That fact makes it hard to understand how Item B could be a limited public forum—which exists when "a government has reserved a forum for certain groups or for the discussion of certain topics." *Walker*, 576 U.S. at 215 (cleaned up).  To assume the Board created a speech forum (which it clearly did not intend) violates settled First Amendment law. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802-03 (1985) ("The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse. . . . We will not find that a public forum has been created in the face of clear evidence of a contrary intent.").

Even so, the parties make no argument for a lesser forum.  And the recognized tests are similar (if not identical).  So the Court need not weigh in because the answer is the same regardless.  The Court, therefore, assumes Item B was a limited public forum.

## C.  Forum Analysis

In a limited public forum, the government may limit speech to "only particular subjects" or "only certain groups." *Keister 2*, 29 F.4th at 1252.  This forum is not "open to the public at large for discussion of any and all topics."

*Barrett*, 872 F.3d at 1224.  Rather, it "can be set up to grant only 'selective access' to [the] class" for which it is reserved.  *Id.* (quoting *Forbes*, 523 U.S. at 679-80).  So the government may restrict speech in a limited public forum if the restriction is "reasonable and viewpoint neutral."  *Keister 2*, 29 F.4th at 1252; *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir. 1995) ("The fact remains that limitations on speech at [public] meetings must be reasonable and viewpoint neutral, but that is all they need to be.").

The briefing does not clearly address these requirements.  As best it can infer, however, the Court tackles each.

*1.  Reasonableness*

To survive a First Amendment challenge, a limitation must be reasonable.  *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470 (2009).  Reasonableness "must be assessed in light of the purpose of the forum and all the surrounding circumstances."  *Bloedorn*, 631 F.3d at 1231 (quoting *Cornelius*, 473 U.S. at 809).  "This is a 'forgiving test.'" *Cambridge Christian*, 942 F.3d at 1243 (quoting *Mansky*, 138 S. Ct. at 1888).

"Because the government chooses how wide to swing open the gate of a limited public forum, it may allow access only to certain speakers based on their identity."  *E.g.*, *Sheets v. City of Punta Gorda, Fla.*, 415 F. Supp. 3d 1115, 1122 (M.D. Fla. 2019).  So "a speaker may be excluded . . . 'if he is not a member of the class of speakers for whose especial benefit the forum was created.'"

*Bloedorn*, 631 F.3d at 1231 (quoting *Cornelius*, 473 U.S. 806).  A limitation "need not be the most reasonable or the only reasonable" one to withstand a constitutional challenge.  *Cornelius*, 473 U.S. at 809.  The government probably bears the burden on reasonableness.  *City of Phila.*, 834 F.3d at 442-44; *see also* 1 Rodney A. Smolla, *Smolla & Nimmer on Freedom of Speech* § 8:8.50 (Apr. 2022 update).

The Board's limitation on public comment to a single period after Item B wasn't unreasonable.  As the Board contends, it may restrict public comment. *Rowe*, 358 F.3d at 803 ("As a limited public forum, a city council meeting is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at hand."); *Jackson v. McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019).  Local governments, including the Board, can limit comment to advance their significant interests in productive and efficient public meetings.  *Rowe*, 358 F.3d at 803.[5]  The point of Board meetings "is not to air personal grievances"; the purpose "is to conduct [Board] business." *Dayton v. Brechnitz*, No. 2:20-cv-307-SPC-MRM, 2021 WL 5163225, at \*8 (M.D.

---

[5] *See also City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Relations Comm'n*, 429 U.S. 167, 176 n.8 (1976); *Heyman*, 888 F.2d at 1332-33; *Cleveland v. City of Cocoa Beach, Fla.*, 221 F. App'x 875, 878-79 (11th Cir. 2007); *Thomas v. Howze*, 348 F. App'x 474, 478-79 (11th Cir. 2009); *Steinburg v. Chesterfield Cnty. Plan. Comm'n*, 527 F.3d 377, 385-87 (4th Cir. 2008); *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 733 (6th Cir. 2009); *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 759-60 (5th Cir. 2010); *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990); *Wright v. Anthony*, 733 F.2d 575, 577 (8th Cir. 1984); *Hansen v. Westerville City Sch. Dist. Bd. of Educ.*, 43 F.3d 1472, at \*11 (6th Cir. 1994) (table decision).

Fla. Nov. 5, 2021). So the Court cannot say the limitation of all public comment to a single period after Item B was facially unreasonable.

If the Board opened Item B as a limited public forum, its members were the only class of speakers allowed.  Given the purpose, this was reasonable. Whether the chair's powers are real or ceremonial (as the parties dispute) is irrelevant.  In part, the Board's purpose with Item B was to fulfill its statutory duty to elect a new chair.  *See* Fla. Stat. § 1001.371.   Realizing that goal without public input was not unreasonable under the First Amendment.  As the Court understands it, the members did not even discuss the election. Rather, the Board merely accepted members' nominations before calling a vote. Because Item B involved no debate or discussion, it was reasonable to limit speakers to voting Boardmembers with public input allowed later.

Like the Board notes, it provided an opportunity for public comment, just not when Jenner preferred.  The decision on structuring and facilitating the Meeting is well within the Board's province.  In other words, it may impose these time, place, and manner restrictions on public speech.  *See, e.g.*, *Porter v. City of Phila.*, 975 F.3d 374, 388-90 (3d Cir. 2020) (restricting all public comment during sheriff's auction was reasonable); *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1138-39 (9th Cir. 2011) (restricting all public expression on private beach was reasonable).  Crucially, the Board's limitation must only be reasonable—not the most logical.  *Christian Legal*

11

*Soc'y Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 692 (2010) ("Instead, we have repeatedly stressed that a State's restriction on access to a limited public forum need not be the most reasonable or the only reasonable limitation." (cleaned up)).  Because it is not the Court's place to weigh whether some other agenda order would be better, the Board's limit of all public comment to one item was reasonable.

Jenner does not challenge this conclusion much.  Instead, she focuses on whether failing to allow public comment at a meaningful time before (or during) Item B violated state law.  As the argument goes, state law provides a right to public comment on certain matters before the Board's decision.  So by violating state law, says Jenner, the Board violated the First Amendment.  This theory fundamentally misunderstands the Constitution.

There is no general constitutional right for citizens to speak when they choose at public meetings: "The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." *Minn. St. Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283 (1984).  Long ago, Justice Holmes explained, "The Constitution does not require all public acts to be done in town meeting or an assembly of the whole." *Bi-Metallic Inv. Co. v. St. Bd. of Equalization*, 239 U.S. 441, 445 (1915).  Even if required to allow speech, the First Amendment does not demand elected representatives listen to their constituents. *Knight*, 465 U.S. at 285 ("Nothing

12

in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues."); *see also Lee v. Driscoll,* 871 F.3d 581, 585-86 (8th Cir. 2017). Rather than impose such federal requirements on local governments, the Constitution (in this forum) simply protects the right to expression from unreasonable limit or viewpoint discrimination. And ultimately, if the people do not feel heard, it entrusts them with the awesome power to register their opinions at the polls. *See 75 Acres, LLC v. Miami-Dade Cnty., Fla.,* 338 F.3d 1288, 1298 (11th Cir. 2003) ("The general theory of republican government is not due process through individual hearings and the application of standards of behavior, but through elective representation, partisan politics, and the ultimate sovereignty of the people to vote out of office those legislators who are unfaithful to the public will." (cleaned up)).

Jenner's argument seems to be the Florida legislature can somehow expand federal constitutional rights. As a basic principle of federalism, this is incorrect. To be sure, states may grant their citizens protections greater than those safeguarded by the First Amendment. *E.g., Kansas v. Carr,* 577 U.S. 108, 129 (2016) (Sotomayor, J., dissenting) ("The Federal Constitution guarantees only a minimum slate of protections; States can and do provide individual rights above that constitutional floor."). It seems that's what

13

Florida did. Floridians have a state-law right to address the Board before action on certain decisions. Fla. Stat. § 286.0114(2); *see also id.* § 286.011(1). There was nothing radical about Florida's choice. But Jenner's suggestion is. Her position is that a state legislature can *raise* the federal constitutional floor. That would mean Florida has the power to legislate an Alaskans' constitutional rights—an outcome antithetical to our federal republic.

For centuries, courts understood states cannot expand or create federal rights. *See, e.g.*, *McCulloch v. Maryland*, 17 U.S. 316, 429-37 (1819) ("[T]here is a plain repugnance in conferring on one government a power to control the constitutional measures of another, which other, with respect to those very measures, is declared to be supreme over that which exerts the control."); *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 802 (1995) ("[S]tates can exercise no powers whatsoever, which exclusively spring out of the existence of the national government, which the constitution does not delegate to them."). While Florida may grant greater rights to its citizens under state law, it has no power to define the extent of First Amendment protections. So any violation of state law does not control.

A Third Circuit case is helpful. *Galena*, 638 F.3d 186. There—as here—plaintiff said public comment restrictions arguably running afoul state law equaled a First Amendment violation. Not so, the Third responded:

14

> [T]he possible questions of whether [plaintiff] had a right to speak under [state law] and whether [defendant] violated [state law] by ejecting him from the Council meeting are distinct from the issues in this First Amendment case . . . . Moreover, though [defendant's] actions may have violated [state law], such a violation would not *per se* infringe on [plaintiff's] First Amendment rights because a statute can create free speech rights under state law beyond those that the First Amendment recognizes.

*Id.* at 201-02.   This makes good sense.   The First Amendment is not coterminous with state-law rights.[6] So even assuming the Board violated state law, its limitation must still be unreasonable to infringe Jenner's federal rights.  As detailed above though, the limit was reasonable.

### 2. Viewpoint Neutrality

And second, the limitation must be viewpoint neutral.  *Summum*, 555 U.S. at 470.  "Viewpoint and content discrimination are separate, but related concepts." *Sheets*, 415 F. Supp. 3d at 1124.  Content-based regulations target specific subject matter whether or not they "discriminate among viewpoints within that subject matter." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 169 (2015).   Viewpoint discrimination is "an egregious form of content discrimination." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).  It exists when "the government targets not subject matter,

---

[6] Florida interprets its constitutional free speech provision in line with the First Amendment. *Dep't of Educ. v. Lewis*, 416 So. 2d 455, 461 (Fla. 1982).  That interpretive principle, however, doesn't go the other way.

but particular views taken by speakers on a subject." *Id.*  Put different, it is "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.*

For example, if a state banned all speech about the big election, that would be content discrimination; but if a state banned all negative comments about Politician Doe, that would be invidious viewpoint discrimination.  While the former may be allowed in a limited public forum, the latter typically isn't. *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017).

Here, there isn't a whiff of viewpoint discrimination.  On its face, the lack of public comment during Item B is viewpoint neutral.  It targets no opinions. Rather, the prohibition applies equally to everyone—prohibiting all public comment whether it supports or opposes anything.  Because there is no indication how the limit on public comment unconstitutionally targets opinions, the Court determines it was viewpoint neutral.

At bottom, this case presents separate sets of rights—federal and state. As explained above, the limitation was reasonable and viewpoint neutral.  So the Board did not infringe Jenner's First Amendment rights.  And the Court dismisses the federal claims.  Whether the Board violated Florida law is another matter.  For the reason below, the Court will not weigh in on that question.

## D.  Supplemental Jurisdiction

Having dismissed the federal claims, the Court turns to the Board's request to decline hearing the state claims.  Here, the Eleventh "strongly encourages" district courts to decline supplemental jurisdiction.  *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999).  Typically, courts also consider "concerns of comity, judicial economy, convenience, fairness, and the like." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1123 (11th Cir. 2005).

After review, the Court employs its discretion and declines to exercise supplemental jurisdiction.  28 U.S.C. § 1367(c)(3).  If the Court must consider the so-called *Gibbs* factors, they do not favor keeping the remaining claims.[7]

First, judicial economy weighs against exercising supplemental jurisdiction.  Judicial economy is "served when issues of state law are resolved by state courts."  *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002).

---

[7] *Compare Ameritox, Ltd. v. Millennium Laboratories, Inc.*, 803 F.3d 518, 539 (11th Cir. 2015) ("Once [§ 1367(c)(3)] is satisfied, the district court possesses the discretion to dismiss . . . . Actually determining whether to dismiss the claims calls for the court to weigh the 'host of factors' outlined in *Gibbs*."), *and Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1570 (11th Cir. 1994) (similar), *and Estate of Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1366 (11th Cir. 2010) (similar), *with Sutherland v. Global Equip. Co.*, 789 F. App'x 156, 162 (11th Cir. 2019) (holding a district court need not even consider those factors when discharging under § 1367(c)(3)), *and Knowles v. Hart*, 825 F. App'x 646, 650 (11th Cir. 2020) (same).  *See also* 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3567.3 (3d ed. Apr. 2022 update) (explaining confusion on applicability of *Gibbs* factors).

Second, convenience points to retaining jurisdiction. For the parties, "it would be most convenient to try every claim in a single forum." *Ameritox*, 803 F.3d at 539.

Third, fairness considerations do not favor jurisdiction here. Each "litigant who brings supplemental claims in [federal] court knowingly risks the dismissal of those claims." *Id.* By suing here, Jenner assumed the risk of declined supplemental jurisdiction. What's more, this case is only three-and-a-half months old. Plus, little to nothing happened here to warrant keeping it. *See Rodriguez v. Page Mech. Grp. Inc.*, No. 2:20-cv-926-SPC-NPM, 2021 WL 1741018, at *1-2 (M.D. Fla. Mar. 10, 2021).

And fourth, comity cuts against exercising supplemental jurisdiction. "It is a bedrock principle that 'needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'" *Ameritox*, 803 F.3d at 539 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). As noted, Jenner may have state-law causes of action. *See* Fla. Stat. § 286.0114(2), (6)-(7); *Gay v. City of Dunedin*, 330 So. 3d 580, 582 (Fla. Dist. Ct. App. 2021). The remaining claims raise important issues of what state-law rights Floridians have to speak before local governing bodies. For the sake of comity, it is preferable for Florida courts to define the state constitutional and statutory rights of its citizens.

In sum, the above weighs against exercising supplemental jurisdiction. So the Court declines it and dismisses Counts 3 and 4 for refiling in state court.[8]   *Crosby v. Paulk,* 187 F.3d 1339, 1352 (11th Cir. 1999); *see also Seegmiller v. Sch. Bd. of Collier Cnty.,* No. 2:15-cv-87-FtM-38DNF, 2015 WL 3604608, at *6-7 (M.D. Fla. June 7, 2015) (declining supplemental jurisdiction over Florida free speech and § 286.0114 claims).

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. 24) is **GRANTED**.

   a.  Counts 1 and 2 are **DISMISSED with prejudice**.

   b.  Counts 3 and 4 are **DISMISSED without prejudice**.

2. The Clerk is **DIRECTED** to enter judgment, deny any pending motions, terminate all deadlines, and close the case

**DONE** and **ORDERED** in Fort Myers, Florida on May 31, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

---

[8] To be clear, the Court expresses no opinion on the alleged state-law violations or the viability of Counts 3 and 4.

19